UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MONICA C., | ) |
| | ) |
|         *Plaintiff* | ) |
| | ) |
| v. | )   No. 2:19-cv-00298-DBH |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
|         *Defendant* | ) |

***REPORT AND RECOMMENDED DECISION***[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ lacked the legal authority to decide this case because she was improperly appointed and, in any event, her physical residual functional capacity ("RFC") assessment did not reflect functional limitations associated with the plaintiff's carpal tunnel syndrome ("CTS"), which the ALJ deemed severe. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 1.[3] I conclude that the plaintiff forfeited her right to challenge the validity of the appointment of the presiding ALJ and that substantial evidence

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.
[3] The plaintiff also challenged the sufficiency of the ALJ's mental RFC assessment. *See* Statement of Errors at 8-10. However, at oral argument, her counsel waived that point.

1

supports the ALJ's RFC determination. Accordingly, I recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2011, Finding 1, Record at 807; that she had the severe physical impairments of obesity, degenerative disc disease of the cervical and lumbar spine, asthma, fibromyalgia, and left-sided CTS, Finding 3, *id*.; that she had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could not lift more than 10 pounds frequently and 20 pounds occasionally, no more than occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, never climb ladders, scaffolds, or ropes or work at unprotected heights or around dangerous equipment, and never work with exposure to temperature extremes, humidity, wetness, or concentrated environmental pollutants such as dust, chemicals, or fumes, Finding 5, *id*. at 812; that, considering her age (33 years old, defined as a younger individual, on her alleged onset date of disability, December 6, 2007), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 827; and that she, therefore, had not been disabled from December 6, 2007, her alleged onset date of disability, through the date of the decision, June 1, 2017, Finding 11, *id*. at 829. The Appeals Council declined to assume jurisdiction of the case following remand, *id*. at 792-94, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.984(a), (b)(2), 416.1484(a), (b)(2); *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Appointments Clause Challenge

The plaintiff contends that remand is warranted because the ALJ who decided her case lacked the authority to do so pursuant to the Supreme Court's decision in *Lucia v. Sec. & Exch. Comm'n*, 138 S. Ct. 2044, 2055 (2018). *See* Statement of Errors at 10-12. In *Lucia*, the Supreme Court concluded that ALJs at the Securities and Exchange Commission ("SEC") were officers of the United States subject to appointment pursuant to the Appointments Clause of the United States Constitution, entitling the petitioner, who had *timely* challenged the validity of the ALJ's appointment before the SEC, to a new hearing before a different, constitutionally appointed ALJ. *See Lucia*, 138 S. Ct. at 2047, 2052-55 (finding that Lucia had timely "contested the validity of Judge Elliot's appointment" when he made such challenge "*before the Commission*, and continued pressing that claim in the Court of Appeals and this Court" (emphasis added)).

3

The plaintiff contends that she timely raised her Appointments Clause challenge before the Appeals Council by letter dated July 26, 2018, "'the first opportunity to do so after the Commissioner and Solicitor General confirmed the unconstitutional appointment of ALJ [Helm] in July 2018.'"  Statement of Errors at 11 (quoting *Culclasure v. Comm'r of Soc. Sec. Admin.*, 375 F. Supp. 3d 559, 565 (E.D. Pa. 2019) (Kearney, J.), *appeal dismissed*, No. 19-2386 (3d Cir. Apr. 21, 2020)).  The commissioner counters that the plaintiff never raised that issue at the administrative level, thereby forfeiting it.  *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Response") (ECF No. 15) at 13-18.  The procedural posture of this case is unusual; however, I agree with the commissioner that the plaintiff failed to timely raise her Appointments Clause challenge at the administrative level.

The ALJ issued her decision on June 1, 2017.  *See* Record at 829.  By letter to the Appeals Council dated June 19, 2017, the plaintiff's appealed the ALJ's decision, citing "multiple errors[,]", *see id*. at 1535-36, and, by letter dated August 11, 2017, he supplemented the appeal to the Appeals Council with substantive points, *see id.* at 799-800.  By letter dated May 8, 2018, the Appeals Council declined to assume jurisdiction of the case, advising that this was the final determination of the commissioner and that the plaintiff had 60 days within which to seek review in federal court, *see id*. at 792-94.

The Supreme Court decided *Lucia* in June 2018 and, while "*Lucia* did not specifically address the constitutional status of ALJs who work in other Federal agencies, including the Social Security Administration (SSA)[,] [t]o address any Appointments Clause questions involving Social Security claims, . . . on July 16, 2018 the Acting Commissioner of Social Security ratified the appointments of [the SSA's] ALJs and approved those appointments as her own." Social

Security Ruling 19-1p ("SSR 19-1p"), reprinted in *West's Social Security Reporting Service Rulings* 1983-1991 (Supp. 2019), at 847.

By letter to the Appeals Council dated July 26, 2018, the plaintiff's counsel again supplemented his client's appeal, objecting that the presiding ALJ had not been properly appointed and thus, did not have authority to preside over the case, a proposition for which he cited *Lucia*. *See* Record at 791.

By letter dated May 1, 2019, the plaintiff's counsel advised the Appeals Council that he had received for the first time a copy of its denial dated May 8, 2018, stating, "[u]nder the circumstances, we are requesting that you either reconsider the denial, specifically considering the supplemental appeal regarding the Lucia issue which was sent to you on August 1, 2018, or allow us additional time to appeal this matter to the U.S. District Court." *Id*. at 781. By letter dated June 5, 2019, the Appeals Council extended the plaintiff's time to file an appeal to 30 days from the date of receipt of its letter. *See id*. at 778-79.

As noted above, the plaintiff cites *Culclasure* for the proposition that she raised her Appointments Clause argument to the Appeals Council at the earliest time after the commissioner ratified ALJ appointments in July 2018. In *Culclasure*, Judge Kearney indeed deemed the claimant's Appointments Clause argument timely raised to the Appeals Council on August 6, 2018, nearly five months after the Appeals Council denied review on March 14, 2018, reasoning that, pursuant to *Sims v. Apfel*, 530 U.S. 103 (2000), there is no "judicially created issue-exhaustion requirement at the Appeals Council level of the Social Security administrative process." *Culclasure*, 375 F. Supp. 3d at 566 (footnote and internal quotation marks omitted).

Yet, this court has sided with "[t]he vast majority of [United States district] courts" in ruling that "a social security claimant may not raise an appointments clause challenge for the first

5

time upon appeal to a federal court[,]" noting that those courts had "roundly and persuasively rejected arguments" including that, pursuant to *Sims*, "a Social Security claimant need not exhaust issues at the administrative level to raise them on appeal[.]" *Christy A. L. v. Saul*, No. 2:18-cv-00260-JDL, 2019 WL 2524776, at *3 (D. Me. June 19, 2019) (citation and internal quotation marks omitted) (rec. dec., *aff'd* July 30, 2019); *see also*, *e.g.*, *Phillip W. v. Saul*, No. 2:19-CV-00258-JDL, 2020 WL 68301, at *2 (D. Me. Jan. 7, 2020) ("In this District and in many other districts, a party is deemed to have waived the ability to challenge the authority of the presiding ALJ under *Lucia* if the challenge is not timely raised at the administrative level.") (rec. dec., *aff'd* Apr. 1, 2020).[4]

At oral argument, the plaintiff's counsel distinguished *Christy A. L.* on the basis that, there, the claimant admitted that she had not raised the Appointments Clause issue at the ALJ or Appeals Council level. She contended that, by contrast, she seasonably raised her Appointments Clause argument to the Appeals Council because (i) it retained jurisdiction over her case until at least June 2019 and (ii) she raised her Appointments Clause claim almost a year earlier, "unequivocally during the administrative proceedings." She cited a then recently-decided unpublished case from United States District Court for the District of Massachusetts, *Sosa v. Saul*, in support of that proposition. In *Sosa*, the Appeals Council denied review of an ALJ's decision on June 15, 2018, six days before *Lucia* was decided, and the claimant raised his Appointments Clause issue to the Appeals Council on July 31, 2018. *See* Memorandum and Order Regarding Plaintiff's Motion to Reverse Decision of Commissioner and Defendant's Motion for Order Affirming Commissioner

---

[4] Following the *Culclasure* ruling, Judge Kelly of the United States District Court for the Eastern District of Pennsylvania disagreed with his colleague, ruling in *Marchant ex rel. A.A.H. v. Berryhill*, CIVIL ACTION No. 18-0345, 2019 WL 2268982 (E.D. Pa. May 28, 2019), that *Sims* was inapplicable to Appointment Clause challenges. *See Marchant*, 2019 WL 2268982, at *6-7.

(Dkt. Nos. 16, 23, & 28) (ECF No. 35), *Sosa v. Saul*, Civil Action No. 18-11701-MGM, slip op. at 2-3 (D. Mass. Jan. 29, 2020). Judge Mastroianni reasoned:

> While it is true that Plaintiff did not raise the appointments clause issue prior to the date of the Appeals Council's decision, finding that failure to constitute waiver is an unfair result given the facts of this case. *Lucia* was not decided until after the Appeals Council issued its decision, preventing Plaintiff from asserting a claim based on that decision until after the Appeals Council had issued its ruling. Then, within the sixty-day period during which the Appeals Council retained the authority to grant a request for more time to file an appeal in federal court, Plaintiff took steps to seek review from the Appeals Council on the appointments clause issue. In the absence of clear authority directing this court to treat Plaintiff's claim before the Appeals Council as untimely, given the specific timeline in this case, the court finds remand is appropriate.

*Id*., slip op. at 3.

To the extent that the plaintiff argues, relying on *Culclasure* and *Sosa*, that waiver is inappropriate here because she did not know that she had the right to challenge the validity of the ALJ's appointment until the Supreme Court decided *Lucia*, *see* Statement of Errors at 11, those authorities are unpersuasive. The plaintiff in *Lucia* did not have the benefit of Supreme Court case law decided in his favor when he raised his Appointments Clause challenge, and courts have rejected arguments similar to that of the plaintiff in the context of *Lucia* challenges to the validity of the appointment of Social Security ALJs. *See e.g.*, *Gearing v. Comm'r of Soc. Sec.*, 417 F. Supp. 3d 928, 943 (N.D. Ohio 2019) ("'By the time Plaintiff received his final agency decision on March 24, 2017, there was already a split of authority on the issue of whether SEC ALJs were constitutionally appointed.'") (quoting *Axley v. Comm'r of Soc. Sec.*, No. 1:18-cv-1106-STA-cgc, 2019 WL 489998, at *2 n.1 (W.D. Tenn. Feb. 7, 2019)).

Nor can the plaintiff fairly be said to have timely raised her Appointments Clause challenge to the Appeals Council, in the sense that she timely placed the matter before the Appeals Council for its consideration. She first raised that point on July 26, 2018, well after the plaintiff's August

7

1, 2017, deadline to file exceptions to the ALJ's decision and more than 60 days after the Appeals Council's May 8, 2018, notice declining to assume jurisdiction in this case.[5]  The Appeals Council, at that point, had no continuing jurisdiction to act.  When the plaintiff's counsel advised the Appeals Council, by letter dated May 1, 2019, that he had only just received a copy of its denial notice dated May 8, 2018, he sought relief in the form *either* of "reconsider[ation] [of] the denial, specifically considering the supplemental appeal regarding the Lucia issue which was sent to you on August 1, 2018, *or* [the] allow[ance] [of] . . . additional time to appeal this matter to the U.S. District Court."  *Id*. at 781.  Because the Appeals Council, at the plaintiff's invitation, chose to afford the latter relief, it did not, and was not obliged to, consider the Appointments Clause issue.  She, thus, did not timely raise this issue at the administrative level.

Remand, accordingly, is unwarranted on the basis of this point of error.

### B. Challenge to the ALJ's Physical RFC Assessment

The plaintiff next asserts that the ALJ erroneously assessed no manipulative limitations stemming from her severe impairment of left-sided CTS, as a result of which her RFC determination is unsupported by substantial evidence.  *See* Statement of Errors at 1, 4.  Again, I am unpersuaded.

The plaintiff first argues that, "[b]y definition[,] this severe impairment significantly limits [her] ability to use her left arm for basic work activities, such as reaching, carrying, or handling[,] [y]et the ALJ did not assess any manipulative limitations."  *Id*. at 4 (citing *Gonzalez-Ayala v. Sec'y of Health & Human Servs.*, 807 F.2d 255, 256 (1st Cir. 1986) (finding that "the ALJ utilized the correct definitional framework for determining whether an impairment or combination of impairments was severe, *i.e.*, whether the impairment or combination of impairments significantly

---

[5] The Appeals Council acknowledged that the ALJ incorrectly provided the plaintiff 60 days, as opposed to the standard 30 days, *see* 20 C.F.R. §§ 404.984, 416.1484, to file any written requests.  Record at 792.

limit[s] the claimant's ability to perform basic work activities such as walking, standing, sitting, lifting or carrying")); *see also* 20 C.F.R. §§ 404.1522, 416.922 (same).

However, as the commissioner correctly rejoins, *see* Response at 2, this court has held that "a finding of a severe impairment need not always result in limitations in an RFC[,]" *Burns v. Astrue*, No. 2:11-cv-151-GZS, 2012 WL 313705, at *4 (D. Me. Jan. 30, 2012) (rec. dec., *aff'd* Feb. 21, 2012); *see also Fecteau v. Berryhill*, No. 2:17-cv-00160-JHR, 2018 WL 1902365, at *3 (D. Me. Apr. 20, 2018) (adopting *Burns*). In *Burns*, this court rejected a claimant's argument that an ALJ had erred in excluding "limitations on concentration" attributable to a severe impairment, attention deficit hyperactivity disorder ("ADHD"), noting that the record indicated that, "once controlled by medication, [the claimant's ADHD] did not impose significant limitations on [her] ability to perform work-related activities." *Burns*, 2012 WL 313705, at *4.

The same is true here. The ALJ concluded that several of the plaintiff's severe impairments, including her left-sided CTS, were

> well controlled when the [plaintiff] adheres to lifestyle changes and is proactive with her health and with conservative modalities, as detailed above. Although she does report some exacerbations of her symptoms at times, it is often associated with lack of adherence to diet, exercise, or other recommendations, and her symptoms overall have not objectively worsened over time. In light of her imaging studies, improved nerve conduction studies, variable physical examinations that have been essentially unremarkable at times, improvement with routine, conservative care through her PCP [primary care practitioner] and with lifestyle changes, activities including her role as a stay-at-home mother and in assisting her mother, opinion evidence, and lack of significant physical complaints for the first 3 ½ years after her alleged onset date, as detailed in this Decision, I find that these conditions are fully accommodated in the [plaintiff]'s RFC limiting her to light work with no more than occasional postural activities, no exposure to hazards, and no exposure to temperature extremes, humidity and wetness. These limitations create a safe working environment for the [plaintiff] and protect her from symptom flares. Moreover, her limitation to simple work with social restrictions further accommodates her reported pain and fatigue from her musculoskeletal conditions, particularly her fibromyalgia.

Record at 818; *see also id*. at 816-17 (CTS symptoms first appeared in September 2011, 3½ years after alleged onset date of disability, and were not reported in the record again until March 2014). The plaintiff challenges none of the above findings, *see* Statement of Errors at 4-8, which I conclude, after review of the record, are supported by substantial evidence.

Moreover, while the plaintiff summarizes her testimony that "her hands burn sometimes and that she doesn't have a lot of strength, especially in her left hand[,] . . . [and] drops things frequently," Statement of Errors at 5 (citing Record at 902-03),[6] she does not challenge the ALJ's finding that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[,]" Record at 813. *See also* Response at 8.

Instead, the plaintiff takes issue with the ALJ's assessment of the medical opinions of record, arguing that the ALJ "substitute[d] her lay opinion for that of the only medical experts whom she credited who also considered the impact of [the plaintiff]'s carpal tunnel syndrome." Statement of Errors at 6 (noting that the ALJ gave great weight to the opinions of treating chiropractor Derek Eagen, D.C., and Leonard M. Rubin, M.D., a medical expert who appeared at hearing, and partial weight to those of agency nonexamining consultants Benjamin Weinberg, M.D., and Geoffrey Knisely, M.D.).

The commissioner rejoins that "the ALJ carefully considered each of the opinions as they related to Plaintiff's physical limitations, particularly any functional impairments related to her

---

[6] The record contains two transcripts of the September 13, 2016, administrative hearing. *See* Record at 851-934, 935-64. The plaintiff cites both. *See* Statement of Errors at 5 (citing Record at 876 and 950-51). The transcript on pages 935-64 of the Record reflects only a portion of the hearing, indicating that "[t]he audio cuts off for the transcribers around 1:02:05 of the 2:25:19. Record at 964. The complete transcript appears on pages 851-934 of the Record, and I, accordingly, refer to this version.

CTS[,]" and, "where there were conflicts in the medical evidence, . . . properly resolved them." Response at 4-5 (citing Record at 823-26). I agree.

First, the ALJ relied on a December 2011 Medical Source Statement of Dr. Eagen, who found "no manipulative . . . limitations." Record at 823 (citation omitted). The plaintiff argues that "[n]othing can be taken from [Dr. Eagen's] silence on the subject of her CTS" because "[t]here is no indication in the record that he was aware of [her] [September 2011] CTS diagnosis or whether, as a chiropractor, he would have even treated CTS." Statement of Errors at 5-6 (footnote omitted).

Nonetheless, the ALJ accounted for this, explaining that Dr. Rubin, whose opinions she gave "great weight, with some modifications," "testified that the overall light work capacity described by Dr. Eagen was generally consistent with the evidence of the record through that point, and that he could not identify any specific medical event to explain the more significant limitations subsequently offered by" an examining consultant, Robert N. Phelps, Jr., M.D., who restricted the plaintiff to no more than occasional handling, fingering, or feeling. Record at 824-25, 2476.[7]

The ALJ explained that the Phelps assessment was entitled to "very little weight[,]" noting that "[t]here were no physical findings on his exam in support of his manipulative limitations, as he described overall good functioning of the [plaintiff]'s upper extremities and good dexterity[,]" and that records received subsequent to Dr. Phelps' December 2014 assessment "underscore the [plaintiff]'s significant improvement in her physical functioning with lifestyle changes, including

---

[7] Dr. Rubin confirmed he reviewed the entire medical record apart from the last two exhibits, Exhibits 74F and 75F; however, the plaintiff's counsel "waive[d] any consideration [o]f those last two exhibits[,]" stating that "they [did not] add anything to the file." Record at 857-58. The ALJ indicated that she had arranged for Dr. Rubin to appear at hearing in part "to help [her] understand why there would be such a change between Exhibit 65-F in 2011 and in 2014[,]" referring to Dr. Eagen's report, Exhibit 65-F, and Dr. Phelps' opinion, Exhibit 58-F. *Id.* at 868. There was no objection by the plaintiff to Dr. Rubin's appearance at hearing or to his testimony regarding the discrepancy between those records. *See*, *e.g.*, *id.* at 858 (affirming that plaintiff's counsel had no objection to Dr. Rubin serving as a medical expert).

diet, exercise, and her weight loss with a BMI under 30 at times." *Id*. at 825 (citations omitted). The plaintiff does not challenge the ALJ's treatment of the Phelps opinion[8] and, in fact, admits that her September 2011 and March 2014 EMG studies, seemingly the only studies available to Dr. Phelps, showed no more than "early or mild left sensory CTS." Statement of Errors at 4.[9]

The plaintiff also does not challenge the ALJ's assignment of "great weight" to Dr. Rubin's opinion,[10] instead arguing that the ALJ erroneously rejected the reaching and handling limitations assessed by Drs. Weinberg and Knisely. *See id.* at 6-7.

As the commissioner rejoins, and his counsel noted at oral argument, an ALJ is not required to adopt all aspects of a medical opinion. *See* Response at 7; *Hicks v. Astrue,* Civil No. 09-393-P-S, 2010 WL 2605671, at *4 (D. Me. June 23, 2010) ("[T]he plaintiff characterizes the administrative law judge's choice of medical evidence on which to rely as 'cherry pick[ing],' but that is precisely the role of the administrative law judge. He need not adopt all of any particular provider's report, if he states his reasons for adopting only a portion of it.") (rec. dec., *aff'd* July 15, 2010). The same is true here.

---

[8] The plaintiff notes that, apart from giving great weight to the Eagen and Rubin opinions and partial weight to those of Drs. Weinberg and Knisely, "[t]he ALJ discounted all of the remaining opinions of record assessing physical limitations[,]" Statement of Errors at 6, including the Phelps opinion. To the extent that she intends this to be a challenge to the rejection of the Phelps opinion, the point is insufficiently developed to be cognizable. *See*, *e.g.*, *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citations omitted).
[9] While the plaintiff's counsel acknowledged at oral argument the imagining studies were "unremarkable," she argued that the ALJ's decision was internally inconsistent in that he found a severe CTS impairment despite those unremarkable September 2011 and March 2014 imaging studies. To the extent that the ALJ erred in finding a severe CTS impairment, the error is harmless in that the finding is more favorable to the plaintiff than the evidence warranted.
[10] The plaintiff further complains that, although the ALJ "assigned great weight to Dr. Rubin's testimony," presumably including his "statement that [the plaintiff] 'probably has pain' because of her carpal tunnel syndrome[,]" she overstepped her bounds as a layperson in assessing no related functional limitations. Statement of Errors at 6-7 (quoting Record at 876). However, the plaintiff does not separately challenge the ALJ's partial discounting of her alleged symptoms, *see* Record at 813, and, in any event, the ALJ "considered Dr. Rubin's overall discussion of a light work capacity in formulating the [plaintiff]'s RFC[,]" *id*. at 824.

The ALJ discussed in detail why she gave only "partial weight" to the opinions of Drs. Weinberg and Knisely, including their CTS findings:

> The consultants are thoroughly familiar with the Social Security Administration disability standards and based their opinions on a comprehensive review of the medical evidence of record that was then available. Their finding of a light work capacity with overall ability to perform postural limitations occasionally and limited exposure to hazards is consistent with the evidence of record as a whole, as detailed above, including the opinions of Dr. Rubin and Dr. Eagen, imaging studies, nerve conduction studies, variable physical examinations, significant improvement with conservative treatment modalities and lifestyle changes, and daily activities, including her responsibilities as a stay at home mother, light housekeeping, driving, shopping, and preparing meals for her family. However, I have not adopted their reaching or manipulative limitations, because the evidence of record overall does not support them. As described above, the [plaintiff]'s CTS is early or mild and her cervical radiculopathy is questionable. Moreover, although she briefly demonstrated some sensory abnormalities in her left upper extremity, she has a negative Tinel's sign, and most of her upper extremity examinations have been unremarkable, with normal sensation, strength, range of motion, and good dexterity. . . .

Record at 825-26 (citations omitted).

The plaintiff, finally, contends that remand is warranted because, in "rejecting the consultants' limitations and, instead, determining that [she] had no [CTS] related functional limitations, the ALJ 'overstepped the bounds of her expertise as a layperson, translating nuanced raw medical evidence into a functional capacity assessment.'" Statement of Errors at 7 (quoting *Staples v. Astrue*, No. CIV 09-440-P-S, 2010 WL 2680527, at *4 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010)). This point, as well, is unpersuasive on these facts. Unlike the ALJ in *Staples*, who had not "clarified how she derived the specific components of her RFC from these sources[,]" *Staples*, 2010 WL 2680527, at *4, the ALJ in this case detailed her reasons for rejecting CTS limitations, including crediting the expert opinions of Drs. Eagen and Rubin that the plaintiff had no manipulative limitations.

The plaintiff's bid for remand on this basis, accordingly, fails.[11]

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 5th day of July, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[11] This is dispositive of the plaintiff's final, derivative, point that remand is warranted because the testimony of the vocational expert regarding jobs available in the national economy was predicated on an RFC finding unsupported by substantial evidence. *See*, *e.g.*, *Cox v. Astrue*, No. 2:10-cv-26-DBH, 2010 WL 5260843, at *5 (D. Me. Dec. 16, 2010) ("Because I find that the commissioner's decision at Step 4 must be upheld, it is not necessary to reach this issue.") (rec. dec., *aff'd* Jan. 4, 2011).